UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2018-2
OCTOBER 1, 2019 SESSION



UNITED STATES OF AMERICA

v.                                    Criminal No.  2.19-00250

                                      18 U.S.C. § 1341
                                      18 U.S.C. § 1343
                                      18 U.S.C. § 1028A

JAMES PINSON
TAMMY NEWSOME
GARY CONN


# I N D I C T M E N T

The Grand Jury charges:

## General Allegations

1.      Between January 1, 2013 and October 1, 2015, defendants JAMES PINSON,

TAMMY NEWSOME, and GARY CONN, along with other persons known and unknown to the

Grand Jury, knowingly devised and intended to devise a scheme to defraud Company A, a major

automobile company, and to obtain money and property from Company A by means of materially

false and fraudulent pretenses and representations.

2.      The defendants and other participants created a fraudulent scheme to take

advantage of a Company A Customer Support Program in which Company A agreed to

repurchase certain model year trucks with excessive rust damage at 150% of their value, so long

as those trucks were owned by individuals, rather than dealerships.

3.     The scheme participants bought hundreds of those trucks at wholesale auction prices, obtained false titles for the trucks in the names of unwitting "false owners," and then fraudulently induced Company A to repurchase the trucks at 150% of their value.

At all relevant times:

## Background

### The Company A Customer Support Program

4.     In 2008, Company A determined that certain model year trucks suffered from excessive frame rust.  In response, Company A began a Customer Support Program to repurchase or repair those trucks.  This program lasted from March 2008 until December 31, 2015.

5.     Under the Customer Support Program, Company A dealerships inspected the truck frames for excessive rust and, if a truck failed inspection, Company A typically agreed to repurchase it.

6.     If an individual customer owned the truck, Company A repurchased it at 150% of the Kelley Blue Book Suggested Retail Value of an "excellent" condition truck, regardless of its actual condition.  In contrast, if a dealership owned the truck, Company A would only reimburse the dealership's actual cost of purchasing the truck.

7.     Company A provided dealers detailed instructions for the Program, which included a requirement that repurchases from individual truck owners occur at a Company A dealership with the owners present.

8.     Company A hired Impartial Services Group ("ISG") to administer the Customer Support Program.  ISG created a web site, or "web portal," to track inspections and repurchases, and sent ISG agents to dealerships to facilitate repurchases between individual customers and dealerships.  ISG's headquarters was in Irving, Texas.  The servers ISG used to host information

sent on and received from the ISG web portal were located in Irving, Texas.  While administering the Customer Support Program, ISG sent and received mail in Irving, Texas.

<u>The Defendants and Other Participants in the Fraudulent Scheme</u>

9.      Defendant JAMES PINSON was the sole owner and manager of Big Blue Motor Sales ("Big Blue Motors"), an auto dealership with locations in Kentucky and the Southern District of West Virginia.

10.     Defendant GARY CONN was the Sales Manager at Big Blue Motors.

11.     Defendant TAMMY NEWSOME was an employee of Big Blue Motors responsible for performing administrative tasks at PINSON's direction, including making deposits to a Big Blue Motors bank account.

12.     Scheme Participant Frank Russo, not named as a defendant in this indictment, was the service manager at "Dealership WV," a Company A dealership located in St. Albans, West Virginia.  His job responsibilities included inspecting trucks for the Company A Customer Support Plan.

13.     Scheme Participant Kevin Fluharty, not named as a defendant in this indictment, was a notary public who notarized signatures of individual customers who sold their trucks to Company A under the Program.

14.     A person referred to as "SC" was a transfer agent for Impartial Services Group ("ISG").  SC administered repurchase transactions at Dealership WV.  His responsibilities included communicating with individual owners and the dealership, and attending repurchase transactions at the dealership with customers.

## General Manner and Means for Carrying Out the Scheme

### Summary

15.     Defendants JAMES PINSON, TAMMY NEWSOME, and GARY CONN, along with Frank Russo, Kevin Fluharty, SC and other persons known and unknown to the Grand Jury, devised and engaged in a scheme to defraud Company A.  The general steps in the scheme were:

a)  Defendant PINSON and others working on his behalf purchased or caused Big Blue Motors to purchase hundreds of Company A trucks at wholesale prices.

b)  Defendants PINSON and CONN, as well as Frank Russo and others working on their behalf obtained copies of unwitting individuals' driver's licenses.

c)  Defendant NEWSOME fraudulently titled Big Blue Motors's trucks using the unwitting individuals' driver's licenses to make it appear as if these individuals, not Big Blue Motors, owned the trucks.

d)  Defendants PINSON and NEWSOME, along with Frank Russo, Kevin Fluharty, and SC, falsified documentation and induced Company A to repurchase the trucks at 150% of their value because Company A believed it was repurchasing the trucks from individual owners, not Big Blue Motors.

e)  Defendants PINSON or NEWSOME deposited the fraudulently obtained funds into Big Blue Motors's bank account, benefitting Defendant PINSON.

16.     The defendants and other scheme participants could reasonably foresee, and in fact knew, that the scheme used interstate wires and mailings to communicate false and fraudulent documents and statements in furtherance of the fraud.

4

17.     The defendants and other participants in the scheme fraudulently induced Company A to repurchase at least 350 trucks, which resulted in Company A losing approximately $4,335,663.

The Scheme Participants Obtain Trucks, Driver's Licenses, and Fraudulent Titles

18.     Defendant PINSON and others working on his behalf caused Big Blue Motors to acquire trucks through auctions or vehicle trade-ins.

19.     Defendants PINSON and CONN, along with Frank Russo and others working on their behalf then obtained copies of individuals' driver's licenses.  The scheme participants often obtained these copies by paying for them or taking them from unwitting acquaintances.

20.     After the scheme participants obtained Company A trucks and copies of driver's licenses, defendant NEWSOME, acting on behalf of PINSON, fraudulently titled and registered the trucks in West Virginia.  At the West Virginia DMV, NEWSOME falsely represented that the trucks owned by Big Blue Motors were owned by the unwitting individuals who had provided their driver's licenses to the scheme participants.  In fact, the unwitting individuals were not legitimate truck owners:  these "false owners" did not purchase or even possess the trucks in question.

21.     To complete the fraudulent title and registration applications, defendant NEWSOME provided false or fraudulent West Virginia addresses and insurance information.  In addition, NEWSOME often forged the false owners' signatures.

The Scheme Participants Inspect and Qualify the Trucks for Repurchase

22.     After securing fraudulent titles under the names of false owners, defendants PINSON or NEWSOME, or others acting on their behalf, moved the trucks from Big Blue Motors to Dealership WV in St. Albans, West Virginia.

23.     Frank Russo then electronically sent information about the trucks and the false owners via the ISG web portal from St. Albans, West Virginia to Irving, Texas.  The defendants knew of or could reasonably foresee that Frank Russo sent this false information electronically.

The Scheme Participants Fraudulently Induce Company A to Repurchase the Trucks

24.     Company A, acting through ISG, reviewed the fraudulent information submitted by Frank Russo and, relying on that information, offered to repurchase the trucks at 150% of Kelley Blue Book Value.

25.     ISG then electronically sent the scheme participants a Customer Offer Letter via interstate wire, which the scheme participants falsified and then electronically sent back to ISG via interstate wire.  If ISG had known that a truck title was fraudulent and the false owner did not actually own the truck, ISG would not have continued to administer the repurchase of that truck.

26.     After ISG received the false Customer Offer Letter, it mailed documentation and a repurchase check from its headquarters in Irving, Texas to SC, in Poca, West Virginia, via private, commercial interstate carrier.  Company A rules required that legitimate individual truck owners complete this documentation, which included a Vehicle Condition Report, Bill of Sale, Odometer Disclosure Statement, Power of Attorney form, and Appointment of Agent form.  The repurchase check was from Company A and made payable to the false owner for an amount equal to 150% of the vehicle's value.

27.     After SC received the documentation and check, defendants PINSON and NEWSOME, Frank Russo, and SC arranged a meeting to finalize the fraudulent truck repurchase.  Under the rules of the Customer Support Program, Company A required that an individual owner must be present for the repurchase.  Defendants PINSON and NEWSOME, as well as Frank

Russo and SC, knew that Company A required individual owners to be present at the repurchase meetings, but they ignored this requirement.

28.     Instead, at the repurchase meeting SC provided the truck repurchase check to defendants PINSON or NEWSOME.  PINSON or NEWSOME then paid SC and Frank Russo in cash for their involvement in the scheme.

29.     SC then met with Kevin Fluharty, a notary public, to falsify the final repurchase documentation.  In the presence of SC, Fluharty forged the false owners' signatures on the final repurchase documentation, and then notarized the forged signatures on the Power of Attorney form.

30.     SC then sent the fraudulent vehicle titles, fraudulent documentation, and copies of the false owners' driver's licenses from Kanawha County, West Virginia to Irving, Texas via private, commercial interstate carrier.

31.     After defendants PINSON or NEWSOME received the Company A repurchase check from SC, they transported it to Kentucky, where defendant NEWSOME forged the false owners' signatures and deposited the checks in Big Blue Motors's bank account.

**Specific Instances of the Scheme to Defraud**

32.     Through their scheme to defraud, the defendants and other scheme participants fraudulently induced Company A to repurchase 350 trucks, including the following trucks:

<u>Truck with a VIN Ending in -630718</u>

33.     Big Blue Motors purchased a Company A truck with a VIN ending in -630718 at auction.

34.     Defendant CONN wrote a $100 check to Known Person B in exchange for Known Person B allowing CONN to make a copy of her driver's license.

35.     On or about March 25, 2015, defendant NEWSOME used a copy of Known Person B's driver's license to prepare an Application for a Certificate of Title from the West Virginia DMV for a Company A truck with a VIN ending in -630718.   NEWSOME falsely represented that Big Blue Motors sold the vehicle to Known Person B and that Known Person B had insured the vehicle.

36.     On or about March 26, 2015, Frank Russo represented that the truck with a VIN ending in -630718 qualified for repurchase under the Company A Customer Support Program and electronically sent Known Person B's information from St. Albans, West Virginia to ISG in Irving, Texas via interstate wire, that is, through ISG's web portal.   Frank Russo falsely represented that Known Person B owned the truck, although he knew Known Person B did not own the truck.

37.     ISG approved the repurchase of the truck on behalf of Company A on or about March 30, 2015.   On or about April 1, 2015, ISG electronically sent Frank Russo a Customer Offer Letter from Irving, Texas to St. Albans, West Virginia via interstate wire.   This letter offered to repurchase the truck for $11,316.   Frank Russo falsified the Customer Offer Letter and then electronically sent it from St. Albans, West Virginia to ISG in Irving, Texas.

38.     ISG appointed SC as its transfer agent for the truck repurchase and on or about April 7, 2015, shipped SC the following documents from Irving, Texas to Poca, West Virginia via private, commercial interstate carrier:   Odometer Disclosure Statement, Power of Attorney form, Appointment of Agent form, Bill of Sale, Vehicle Condition Report, and a check from Company A made payable to Known Person B for $11,316.

39.     Defendants NEWSOME or PINSON, Frank Russo, and SC arranged to meet on or about April 8, 2015 to finalize the fraudulent repurchase of the truck with a VIN ending in -630718.

40.     At the meeting, defendants NEWSOME or PINSON accepted the Company A check made payable to Known Person B.  NEWSOME or PINSON then paid Frank Russo between $400 and $600, and SC $100 for their participation in the scheme.

41.     SC then took the repurchase documentation to Kevin Fluharty, who, in exchange for $50, forged and notarized the signature of Known Person B on the documentation.

42.     On or about April 8, 2015, SC mailed the falsified documentation from Kanawha County, West Virginia to ISG in Irving, Texas via private, commercial interstate carrier.

43.     On or about April 9, 2015, defendant NEWSOME endorsed the $11,316 check made payable to Known Person B, and deposited the check into Big Blue Motors's bank account.

<u>Truck with a VIN Ending in -663091</u>

44.     Big Blue Motors purchased a Company A truck with a VIN ending in -663091 at auction.

45.     Known Person C provided a copy of her driver's license to Big Blue Motors when she purchased a car at the dealership.  While she was buying this car, a Big Blue Motors employee offered her $200 to allow him to title a Company A truck in her name.  Known Person C refused. Known Person C did not authorize the scheme participants to use her driver's license to fraudulently title a Company A truck.

46.     Nevertheless, on or about May 8, 2015, NEWSOME used a copy of Known Person C's driver's license to prepare an Application for a Certificate of Title from the West Virginia DMV in Hurricane, West Virginia for a Company A truck with a VIN ending in -663091.

NEWSOME falsely represented that Big Blue Motors sold the vehicle to Known Person C and that Known Person C had insured the vehicle.

47.   On or about May 8, 2015, Frank Russo represented that the truck with a VIN ending in -663091 qualified for repurchase under the Company A Customer Support Program and electronically sent Known Person C's information from St. Albans, West Virginia to ISG in Irving, Texas via interstate wire, that is, ISG's web portal.   Frank Russo falsely represented that Known Person C owned the truck, although he knew Known Person C did not own the truck.

48.   ISG approved the repurchase of the truck on behalf of Company A on or about May 11, 2015.   On or about May 13, 2015, ISG electronically sent Frank Russo a Customer Offer Letter from Irving, Texas to St. Albans, West Virginia.   This letter offered to repurchase the truck for $13,404.   That same day, Frank Russo falsified the Customer Offer Letter and then electronically sent it from St. Albans, West Virginia to ISG in Irving, Texas.

49.   ISG appointed SC as its transfer agent for the truck repurchase and on or about May 20, 2015, shipped SC the following documents from Irving, Texas to Poca, West Virginia via private, commercial interstate carrier:   Odometer Disclosure Statement, Power of Attorney form, Appointment of Agent form, Bill of Sale, Vehicle Condition Report, and a check made payable to Known Person C for $13,404.

50.   Defendants NEWSOME or PINSON, Frank Russo, and SC arranged to meet on or about May 21, 2015 to finalize the fraudulent repurchase of the truck with a VIN ending in -663091.

51.   At the meeting, defendants NEWSOME or PINSON accepted the check made payable to Known Person C.   NEWSOME or PINSON then paid Frank Russo between $400 and $600 and SC $100 for their participation in the scheme.

52.     SC then took the repurchase documentation to Kevin Fluharty, who, in exchange for $50, forged and notarized the signature of Known Person C on the documentation.

53.     On or about May 21, 2015, SC mailed the falsified documentation from Kanawha County, West Virginia to ISG in Irving, Texas via private, commercial interstate carrier.

54.     On or about May 21, 2015 defendant NEWSOME endorsed the $13,404 check made payable to Known Person C, and deposited the check into Big Blue Motors's bank account.

<u>Truck with a VIN Ending in -676350</u>

55.     On or about March 4, 2015, NEWSOME issued a check drawn on Big Blue Motors's bank account made payable to MR Auto in the amount of $23,700.  The check's memo line references the VINs of three trucks, including one identified as "676350."

56.     Frank Russo obtained a copy of a Known Person D's driver's license.  Frank Russo later paid Known Person D $200 in cash for the use of her license.

57.     On or about March 13, 2015, NEWSOME used a copy of Known Person D's driver's license to prepare an Application for a Certificate of Title from the West Virginia DMV for a Company A truck with a VIN ending in -676350.  NEWSOME falsely represented that Big Blue Motors sold the vehicle to Known Person D and that Known Person D had insured the vehicle.

58.     On or about March 17, 2015, Frank Russo represented that the truck with a VIN ending in -676350 qualified for repurchase under the Company A Customer Support Program and electronically sent Known Person D's information from St. Albans, West Virginia to ISG in Irving, Texas via interstate wire, that is, ISG's web portal.  Frank Russo falsely represented that Known Person D owned the truck, although he knew Known Person D did not own the truck.

59.     ISG approved the repurchase of the truck on behalf of Company A on March 20, 2015.  On March 23, 2015, ISG electronically sent Frank Russo a Customer Offer Letter from Irving, Texas to St. Albans, West Virginia.  This letter offered to repurchase the truck for $10,821.  Frank Russo instructed Known Person D to sign the Customer Offer Letter and then Frank Russo electronically sent it from St. Albans, West Virginia to ISG in Irving, Texas.

60.     ISG appointed SC as its transfer agent for the truck repurchase and on or about March 27, 2015, shipped SC the following documentation from Irving, Texas to Poca, West Virginia via private, commercial interstate carrier:  Odometer Disclosure Statement, Power of Attorney form, Appointment of Agent form, Bill of Sale, Vehicle Condition Report, and a check made payable to Known Person D for $10,821.

61.     Defendants NEWSOME or PINSON, Frank Russo, and SC arranged to meet on or about April 1, 2015 to finalize the fraudulent repurchase of the truck with a VIN ending in -676350.

62.     At the meeting, defendants NEWSOME or PINSON accepted the check made payable to Known Person D.  NEWSOME or PINSON then paid Frank Russo between $400 and $600 and SC $100 for their participation in the scheme.

63.     SC then took the repurchase documentation to Kevin Fluharty, who, in exchange for $50, forged and notarized the signature of Known Person D on the documentation.

64.     On or about April 1, 2015, SC mailed the falsified documentation from Kanawha County, West Virginia to ISG in Irving, Texas via private, commercial interstate carrier.

65.     On or about April 1, 2015, defendant NEWSOME endorsed the $10,821 check made payable to Known Person D and then deposited it in Big Blue Motors's bank account.

**The Charges**

**Counts 1-3**
**(Wire Fraud)**

66.     The Grand Jury realleges and incorporates by reference paragraphs 1-65, as if fully set forth herein.

67.     On or about the dates specified below for each count, at or near St. Albans, Kanawha County, West Virginia, in the Southern District of West Virginia, and elsewhere, defendants JAMES PINSON, TAMMY NEWSOME, and GARY CONN, along with other persons known and unknown to the Grand Jury, having devised and intended to devise the above-described scheme to defraud Company A, and for the purpose of executing the scheme to defraud, knowingly transmitted and caused to be transmitted by means of wire and radio communication in interstate commerce the writing, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count.

| Count | Approx. Date | VIN | Interstate Transmission |
|-------|------|-----|-------------------------|
| 1 | 03/26/15 | -630718 | Truck and false owner information sent from St. Albans, West Virginia to ISG in Irving, Texas via the ISG web portal |
| 2 | 05/08/15 | -663091 | Truck and false owner information sent from St. Albans, West Virginia to ISG in Irving, Texas via the ISG web portal |
| 3 | 03/17/15 | -676350 | Truck and false owner information sent from St. Albans, West Virginia to ISG in Irving, Texas via the ISG web portal |

All in violation of Title 18, United States Code, Section 1343.

## Counts 4-9
## (Mail Fraud)

68.     The Grand Jury realleges and incorporates by reference paragraphs 1-65, as if fully set forth herein.

69.     On or about the dates specified below for each count, at or near the locations specified below for each count, in the Southern District of West Virginia, and elsewhere, defendants JAMES PINSON, TAMMY NEWSOME, and GARY CONN, along with other persons known and unknown to the Grand Jury, having devised and intended to devise the above-described scheme to defraud Company A, and for the purpose of executing the scheme to defraud:

- for Counts 4, 6, and 8, caused to be deposited the items described to be sent and delivered by a private commercial interstate carrier; and

- for Counts 5, 7, and 9, knowingly caused to be delivered by a private commercial interstate carrier the items described, according to the direction thereon.

| Count | Approx. Date | VIN | Mailing |
|-------|--------------|-----|---------|
| 4 | 04/07/15 | -630718 | Repurchase documentation and check for $11,316 sent from Irving, Texas to Poca, Putnam County, West Virginia |
| 5 | 04/08/15 | -630718 | Repurchase documentation sent from Kanawha County, West Virginia to ISG in Irving, Texas |
| 6 | 05/20/15 | -663091 | Repurchase documentation and check for $13,404 sent from Irving, Texas to Poca, Putnam County, West Virginia |
| 7 | 05/21/15 | -663091 | Repurchase documentation sent from Kanawha County, West Virginia to ISG in Irving, Texas |
| 8 | 03/27/15 | -676350 | Repurchase documentation and check for $10,821 sent from Irving, Texas to Poca, Putnam County, West Virginia |
| 9 | 04/01/15 | -676350 | Repurchase documentation sent from Kanawha County, West Virginia to ISG in Irving, Texas |

All in violation of Title 18, United States Code, Section 1341.

## Count 10
### (Aggravated Identity Theft)

70.     The Grand Jury realleges and incorporates by reference paragraphs 1-65, as if fully set forth herein.

71.     On or about May 8, 2015, at or near Hurricane, Putnam County, West Virginia, in the Southern District of West Virginia, defendant TAMMY NEWSOME did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, violations of 18 U.S.C. §§ 1341 and 1343, knowing that the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Section 1028A(a)(1).

**Notice of Forfeiture**

1.      The allegations contained in paragraphs 1-65 above and, in particular Counts 1-9 of this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(D) and 982(a)(3), and 28 U.S.C. § 2461(c)

2.      Upon conviction of the offense in violation of Title 18, United States Code, Sections 1341 and 1343 set forth in Counts 1-9 of this indictment, the defendants JAMES PINSON, TAMMY NEWSOME, and GARY CONN shall forfeit to the United States of America, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982 (a)(2), and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s).

3.      As to defendant JAMES PINSON, the property to be forfeited includes, but is not limited to, the following, for which the United States will seek a money judgment $4,335,663 in United States currency.

4.      If any of the property described above, as a result of any act or omission of the defendant[s]:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property, which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2), and 28 U.S.C. § 2461(c).

MICHAEL B. STUART
United States Attorney

By: _____

STEFAN J. O. HASSELBLAD
Assistant United States Attorney