IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.   CRIMINAL ACTION NO. 2:19-cr-00250

JAMES PINSON
TAMMY NEWSOME
GARY CONN.

MEMORANDUM OPINION ORDER

Pending before the court is a Joint Motion to Dismiss for Failure to State an Offense, filed by Defendants, James Pinson, Gary Conn, and Tammy Newsome. [ECF No. 67]. The Government has responded, [ECF No. 78], and the Defendants have filed a joint reply. [ECF No. 88]. The Motion is now ripe for adjudication. The Motion is **DENIED** for the reasons that follow.

I.  Background

On October 1, 2019, a federal grand jury charged Defendants James Pinson, Tammy Newsome, and Gary Conn with nine counts of wire and mail fraud in connection with a scheme to defraud Toyota Motor Sales, U.S.A. Inc. ("Toyota"). *See* [ECF No. 1] ¶¶ 67, 69. Defendant Newsome was also charged with one count of aggravated identity theft. *See id.* ¶ 71. On September 4, 2019, the federal grand jury charged Defendants Frank Russo and Kevin Fluharty separately for their alleged role in the same scheme. *See United States v. Russo*, No. 2:19-cr-222, [ECF No. 5] (Sep.

5, 2019). On February 27, 2020, Stanley Clark pleaded guilty to a charge pursuant to an information for his role in the same scheme. *See United States v. Stanley Clark*, No. 2:20-cr-00028, [ECF No. 12] (Feb. 27, 2020). On March 3, 2020, a federal grand jury returned a Superseding Indictment against Pinson, Newsome, and Conn. The Superseding Indictment charges all three Defendants with the following: wire fraud in violation of 18 U.S.C. § 1343 (Counts One–Three); mail fraud in violation of 18 U.S.C. § 1341 (Counts Four–Nine); and aggravated identity theft in violation of 18 U.S.C. § 1028(a)(1) (Count Ten). Superseding Indictment [ECF No. 82] ¶¶ 66–79. The Superseding Indictment also charges Defendant Pinson with two counts of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Counts Eleven and Twelve) and charges Defendant Conn with one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count Twelve).

### a. Factual allegations

The Superseding Indictment alleges the following. In 2008, Toyota began a Customer Support Program (the "CSP") to repurchase or repair a certain model of Toyota Tacoma trucks that exhibited rust perforation on the vehicle's frame. *Id.* at ¶ 4. "If an individual customer owned the truck, Toyota repurchased it at 150% of the Kelley Blue Book Suggested Retail Value of an 'excellent' condition truck, regardless of its actual condition. In contrast, if a dealership owned the truck, Toyota would only reimburse the dealership's actual cost of purchasing the truck." *Id.* at ¶ 6. "Toyota hired Impartial Services Group ("ISG") to administer the Customer Support Program." *Id.* at ¶ 8.

Defendant Pinson owned a Kentucky car dealership called Big Blue Motor Sales ("Big Blue Motors"), Defendant Conn was the dealership's sales manager, and Defendant Newsome was an employee of the dealership. *Id.* ¶¶ 9–11. According to the Superseding Indictment, between 2013 and 2015, Pinson, Conn, and Newsome, along with others charged and uncharged, allegedly engaged in a fraudulent scheme with the following general steps:

1. Defendants caused Big Blue Motors to buy hundreds of Toyota Tacomas at wholesale prices.

2. Next, Defendants fraudulently titled the Tacomas in the names of "false owners"—acquaintances or unwitting customers of Big Blue Motors. These false owners typically never possessed or even saw the Tacomas they purportedly owned. In at least one case, Defendant Newsome stole the identity of a Big Blue Motors customer and used the identity to fraudulently title a truck. To complete the fraudulent title and registration applications, Defendant Newsome provided false or fraudulent West Virginia addresses and insurance information. Defendant Newsome also forged the false owner's signatures.

3. Defendants bribed Frank Russo, a service manager from a Toyota dealership in St. Albans, West Virginia, who was responsible for inspecting the Tacomas for qualification under the CSP for Tacomas with excessive frame rust, to submit information to Toyota via ISG. Defendants also bribed Stanley Clark, an ISG representative, for his participation in the scheme.

> Clark, in turn, bribed a notary, Kevin Fluharty, who forged and notarized the signatures of false owners on documents.
>
> 4. Defendants then falsely represented to Toyota that the false owners actually owned the Tacomas and thereby induced Toyota to repurchase the Tacomas at 150% of Kelley Blue Book Value under the Toyota CSP.
>
> 5. Defendants caused thousands of documents to be forged and falsely notarized, and then submitted them to Toyota via ISG. Defendants fraudulently induced Toyota to repurchase 350 trucks during the 2013 to 2015 period.
>
> 6. Defendants then forged the false owners' signatures on checks issued to the false owners and deposited the money in Big Blue Motors' bank account.

*See id.* ¶¶ 1–32. The Superseding Indictment alleges three specific instances of Defendants' scheme to defraud. *Id.* at ¶¶ 32–65.

Defendants now move to dismiss the Superseding Indictment for failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v). [ECF Nos. 67, 70]. Defendants Pinson and Conn filed this Motion to Dismiss on February 20, 2020 to which Defendant Newsome joined on February 20, 2020. *See id.* As previously mentioned, a federal grand jury returned the Superseding Indictment on March 3, 2020. In their joint reply brief, Defendants maintain that their Motion "remain[s] relevant and still appl[ies] to the mail and wire fraud charges, as well as additional charges." Defs.' Joint Reply in Supp. of Mot. to Dismiss [ECF No. 88] 1, n.1.

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) states, in pertinent part, that "[t]he following defenses, objections, and requests must be raised by pretrial motion if the basis of the motion is then reasonably available and the motion can be determined without a trial on the merits:... a defect in the indictment or information, including:...failure to state an offense...." To overcome such a motion, the indictment must include every essential element of the offense. *See United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014). "The sufficiency of an indictment is determined by practical, not technical, considerations." *United States v. Osborne*, 173 F.3d 853 (4th Cir. 1999). In general, it is "sufficient that an indictment set forth the offense in the words of the statute itself." *Perry*, 757 F.3d at 171. Furthermore, if the indictment meets this standard, it "is valid on its face" and the court may not "review the sufficiency of evidence supporting" the indictment. *United States v. Burks*, 746 F. App'x 191, 198 (4th Cir. 2018). In other words, to warrant dismissal of the indictment, a defendant must demonstrate that the allegations therein, even if true, would not state an offense. *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). A court cannot grant the motion to dismiss under Rule 12 if a defendant's "legal contentions are inextricably bound up with the facts of the case." *United States v. Blankenship*, No. 5:14-CR-00244, 2015 WL 1565724, at *2 (S.D.W. Va. Apr. 8, 2015).

"A court generally is bound by the factual allegations contained within the four corners of the indictment" when ruling on a motion for failure to state an offense in an indictment. *See United States v. Welch*. 327 F.3d 1081, 1090 (10th Cir. 2003).

Some courts have held a rare exception to this general rule, allowing consideration of facts outside the indictment. *See United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010). This exception exists in the "'limited circumstances' where '[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts,' and [3] the district court can determine from them that, 'as a matter of law, the government is incapable of proving its case beyond a reasonable doubt.'" *Id.* (quoting *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir.1994)). In other words, the extra-indictment evidence must be agreed to by the parties, with "neither side having expressed any objection to its consideration or any objection to its completeness and accuracy." *Id.* at 1261.

### III. Discussion

Defendants request that I consider a set of documents related to the CSP ("the CSP Plan Documents"). Defs.' Joint Mot. to Dismiss [ECF Nos. 67, 67–1] 4, n.3, Ex. A. The crux of Defendants' argument is that the CSP Plan Documents indicate that non-Toyota run dealerships could participate in the program and thus there was no scheme to defraud. The CSP Plan Documents "is a collection of memoranda, a letter to Toyota Tacoma owners, a FAQ, information explaining to Toyota dealers how they should handle and process claims, and other materials." *Id.* Specifically the CSP Plan Documents contain the following:

1. a Memorandum to "ALL REGION/PRIVATE DISTRIBUTOR GENERAL MANAGERS/VICE PRESIDENTS;"
2. a Memorandum to "ALL TOYOTA DEALER PRINCIPALS, SERVICE MANAGERS, PARTS MANAGERS;"
3. a Sample Letter to Toyota Tacoma owners;
4. a Tacoma FAQ;

     5. an ISG Web-Portal Input Form;
     6. a Toyota Warranty Policy Bulletin;
     7. a Fax Cover Sheet for complimentary loaner vehicles; and
     8. Toyota "Dealership Customer Handling Procedure following Vehicle Inspection" instructions

*Id.* These documents are extra-indictment evidence. Defendants argue these documents should be considered in conjunction with the Superseding Indictment because they are critical documents relied on by the Government in drafting the allegations. *See* Defs.' Joint Mot. to Dismiss [ECF No. 67] 8. The Government argues that Defendants' subjective contract interpretation of the terms of the CSP is misplaced at this stage of the proceedings. *See* Government's Resp. to Defs.' Mot. to Dismiss [ECF No. 78] 8. I agree with the Government. There is a dispute of fact or law as to whether non-Toyota dealerships were eligible to participate in the CSP. It would be premature and procedurally improper to look to extra-indictment evidence to decide that issue at the motion to dismiss stage. *See Pope*, 613 F.3d at 1260. The Superseding Indictment is not flawed on its face. It sufficiently states the offenses of wire fraud (Counts One–Three), mail fraud (Counts Four–Nine), aggravated identity theft (Count Ten), and money laundering conspiracy (Counts Eleven and Twelve).

    **a. Wire fraud and mail fraud**

    Both wire fraud and mail fraud require the existence of a scheme to defraud. The elements of a wire fraud offense mirror those of a mail fraud offense. "The essential elements of a wire fraud offense are '(1) the existence of a scheme to defraud and (2) the use of … a wire communication [in interstate commerce] in furtherance of the scheme.'" *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012), as

amended (Mar. 29, 2012) (quoting *United States v. Curry*, 461 F.3d 452, 457 (4th Cir.2006)). "The two elements of mail fraud are: (1) the existence of a scheme to defraud, and (2) the use of the mails [in interstate commerce] for the purpose of executing the scheme." *United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001).

A scheme to defraud "can be in the form of an assertion of a material falsehood with the intent to deceive or active concealment of a material fact with the intent to deceive." *United States v. Landersman*, 886 F.3d 393, 407 (4th Cir. 2018) (quoting *United States v. Pasquantino*, 336 F.3d 321, 333 (4th Cir. 2003) (en banc), aff'd, 544 U.S. 349 (2005)). A fact is material if it has a natural tendency to influence or is capable of influencing the intended victim. *Neder v. United States*, 527 U.S. 1, 22, 24 (1999).

Defendants argument hinges on the assertion that the CSP Plan Documents make clear that dealerships were eligible to receive the enhanced 150% compensation for the repurchase of affected trucks so long as the dealerships were not authorized Toyota dealerships. The issue here turns on the materiality requirement of a scheme to defraud. According to the indictment, Defendants induced Toyota to buy back the trucks under the false pretenses that individual customers owned the trucks. The Superseding Indictment alleges that to accomplish this inducement Defendants created fraudulent titles and registrations for trucks, with fraudulent addresses, insurance information, and signatures. Superseding Indictment [ECF No. 82] ¶¶ 20, 21. This false information was sent to Toyota, acting through ISG. *Id.* at ¶ 23. Relying on this information, Toyota, acting through ISG, offered to repurchase the trucks at

150% of Kelley Blue Book Value. *Id.* at ¶ 24. Defendants paid Kevin Fluharty, a notary public, to falsify the final repurchase documentation by notarizing the forged signatures on the Power of Attorney form. *Id.* at 29. Defendants paid Stanley Clark, an ISG employee, to send the fraudulent vehicle titles, fraudulent documentation, and copies of the false owners' driver's licenses to ISG. *Id.* at ¶¶ 27, 28. The repurchase check from Toyota was made out to the false owners. After receiving the check, Defendant Newsome forged the false owner's signatures and deposited the checks in Big Blue Motors' bank account. All of this alleged conduct clearly constitutes assertions of falsehoods.

The central question then is whether ownership of the Tacoma trucks is a material fact. In other words, did the fact that Big Blue Motors owned the trucks at issue, as opposed to individual customers, have a natural tendency to influence or was capable of influencing Toyota to buyback the trucks at the 150% of Kelley Blue Book Value under the CSP. As previously stated, it would be premature to determine as a matter of law based off the extra-indictment evidence presented in the CSP Plan Documents that ownership of the trucks had no bearing on whether Toyota would buyback the trucks at the elevated rate. Perhaps this issue should be revisited on a motion for acquittal at trial; however, evaluating extra-indictment evidence, to which the Government objects, is improper here. The Superseding Indictment alleges that Toyota repurchased the trucks from Defendants at higher price rate under the false pretense that the trucks were owned by individual customers and that Toyota would not have repurchased the trucks had it known that Big Blue Motors owned the trucks.

9

Superseding Indictment [ECF No. 82] ¶¶ 24–31. This allegation is sufficient to state the element of a scheme to defraud.

Defendants further argue that Toyota did not suffer harm in the scheme to defraud and therefore the Superseding Indictment fails to state an offense for wire fraud and mail fraud. *See* Defs.' Joint Mot. to Dismiss [ECF No. 67] 3, 8. This argument is a non-starter. *See United States v. Adler*, 186 F.3d 574, 576 (4th Cir. 1999) (holding that wire fraud and mail fraud do not require the victim to suffer financial loss). Moreover, "[t]he crux of mail or wire fraud is the execution of a scheme to defraud, and the scheme need not be successful in order to constitute a crime …" *United States v. McNeil*, 45 F. App'x 225, 228–29 (4th Cir. 2002) (citing *United States v. Bryan*, 58 F.3d 933, 943 (4th Cir. 1995)).

I find that the Superseding Indictment includes every essential element of wire fraud and mail fraud. Accordingly, I **DENY** Defendants' Motion to Dismiss Counts One–Three and Counts Four–Nine.

### b. Aggravated identity theft

The elements of aggravated identity theft under 18 U.S.C. § 1028A(a)(1), are the following: (1) the defendant knowingly transferred, possessed, or used, (2) without lawful authority, (3) a means of identification of another person, (4) during and in relation to a predicate felony offense. *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (citing 18 U.S.C. § 1028A(a)(1)). Here, the Superseding Indictment clearly alleges facts that Defendants knowingly used, without lawful authority, a means of identification of another person, that is, the driver's license, name, and

10

signature of a known person in relation to their scheme to defraud Toyota. Superseding Indictment [ECF No. 82] ¶ 71. The underlying predicate felony offenses alleged in the Superseding Indictment is wire fraud and mail fraud. *Id.* Defendants make no argument regarding the sufficiency of the Superseding Indictment as to Count Ten, except the arguments that relate to wire fraud and mail fraud. Because I find that the Superseding Indictment sufficiently states an offense for wire fraud and mail fraud, I so too find that it properly states the element of an underlying predicate felony necessary to allege the crime of aggravated identity theft. Accordingly, Defendants' Motion to Dismiss Count Ten is **DENIED**.

### c. Money laundering conspiracy

The elements of money laundering conspiracy under 18 U.S.C. § 1956(h) are the following: (1) the defendant knowingly formed an agreement with one or more persons, (2) to commit money laundering, (3) and that, at some time during the existence of the conspiracy, the defendant had knowledge of the conspiracy's essential objectives and with that knowledge deliberately and voluntarily joined the conspiracy with the intent to further its unlawful purpose. *United States v. Vinson*, 852 F.3d 333, 356 (4th Cir. 2017). The elements of money laundering are (1) the defendant knowingly engaged or attempted to engage in a monetary transaction in the United States, (2) involving property with value greater than $10,000, (3) derived from specified criminal activity. *Id.* (citing 18 U.S.C. § 1957).

### 1. Defendant Pinson (Counts Eleven and Twelve)

The Superseding Indictment sufficiently alleges that Defendant Pinson

11

knowingly formed an agreement with other persons to engage in monetary transactions in and affecting interstate commerce, in criminally derived property greater than $10,000. Superseding Indictment [ECF No. 82] ¶¶ 73–74, 78–79. Specifically, the Superseding Indictment states that Defendant Pinson controlled the financial activities of Big Blue Motors, using its resources for personal benefit in expenditures over $10,000. *Id.* at 73–74. Additionally, Defendant Pinson allegedly intended to promote the carrying on of the specified unlawful activities by taking the proceeds of his fraud scheme, depositing those proceeds into the Big Blue Motor Bank account, and then using those proceeds to purchase more vehicles to use in the fraud scheme. *Id.* at ¶ 79. Here, the specified unlawful activity refers to the crimes of mail fraud and wire fraud. *Id.* at ¶¶ 73, 78. Defendants make no argument regarding the sufficiency of the Superseding Indictment as to Count Eleven and Twelve, except the arguments that relate to wire fraud and mail fraud. Because I find that the Superseding Indictment sufficiently states an offense for wire fraud and mail fraud, I so too find that it properly states the element of a specified unlawful activity necessary to allege the crimes of money laundering conspiracy. Accordingly, Defendants' Motion to Dismiss Counts Eleven and Twelve against Defendant Pinson is **DENIED**.

### 2. Defendant Conn (Count Twelve)

The Superseding Indictment sufficiently alleges that Defendant Conn knowingly formed an agreement with other persons to engage in monetary transactions in and affecting interstate commerce, in criminally derived property

greater than $10,000. Superseding Indictment [ECF No. 82] ¶¶ 78–79. Specifically, the Superseding Indictment states that Defendant Conn intended to promote the carrying on of the specified unlawful activities by taking the proceeds of his fraud scheme, depositing those proceeds into the Big Blue Motor Bank account, and then using those proceeds to purchase more vehicles to use in the fraud scheme. *Id.* at ¶ 79. Here, the specified unlawful activity refers to the crimes of mail fraud and wire fraud. *Id.* at ¶¶ 73, 78. Defendants make no argument regarding the sufficiency of the Superseding Indictment as to Count Twelve, except the arguments that relate to wire fraud and mail fraud. Because I find that the Superseding Indictment sufficiently states an offense for wire fraud and mail fraud, I so too find that it properly states the element of a specified unlawful activity necessary to allege the crime of money laundering conspiracy. Accordingly, Defendants' Motion to Dismiss Counts Twelve against Defendant Conn is **DENIED**.

## IV. Conclusion

Defendants' Joint Motion to Dismiss for Failure to State an Offense [ECF No. 67] is **DENIED** on all counts. The court **DIRECTS** the Clerk to send a copy of this Order to Defendants and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: May 21, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

13